Mrs. J. K. HAGY, Plaintiff,

v.

Norma Jean ALLEN et al., Defendants.

Kathleen H. ROBERTS, Plaintiff,

v.

Norma Jean ALLEN et al., Defendants.

Alex ROBERTS, Jr., Plaintiff,

v.

Norma Jean ALLEN et al., Defendants.

Nos. 463–465.

United States District Court
E. D. Kentucky,
Pikeville Division.
May 31, 1957.

Bradley Roberts (of Stant & Roberts), Bristol, Va., E. R. Hays (of Baird & Hays), Pikeville, Ky., for plaintiffs.

J. Peyton Hobson, Jr. (of Hobson & Stephens), Pikeville, Ky., Joe Hobson, Prestonsburg, Ky., for defendants.

SWINFORD, District Judge.

The records in these three actions are before the court as the result of a pretrial conference held for the purpose of determining the sufficiency in law of the defense of the Kentucky statute of limitation, KRS 413.140. The statute requires that actions for personal injuries shall be commenced within one year after the cause of action accrued. The

plaintiffs in their respective cases are claiming damages from the defendants for personal injuries and property damage growing out of the alleged negligence of the defendants in the operation of an automobile in which they were riding in Floyd County in this Eastern District of Kentucky on January 2, 1956. Each of the plaintiffs are nonresidents of the State of Kentucky and reside at Bristol, Virginia.

The defendants plead that the cause of action did not accrue within one year next before the commencement of the action. The facts disclosed by the record on which this defense is based are agreed by the parties to be correct and are as follows.

The plaintiffs employed Mr. Bradley Roberts, an attorney of Bristol, Virginia, to represent them in the prosecution of these actions. The complaints were prepared by Mr. Roberts and mailed to local counsel of record, Mr. Ed R. Hays of the firm of Baird & Hays of Pikeville, Kentucky. Mr. Hays received the complaints in the mail on Monday morning, December 31, 1956. He immediately attempted to contact Mrs. Willa W. Alexander, the deputy clerk of the United States District Court for the Eastern District of Kentucky, at the office of that court in Pikeville. He learned that the office was closed; that Mrs. Alexander was on vacation at her home in the City of Pikeville and would not be in her office until January 2, 1957. He contacted Mrs. Alexander at her home and since the time was limited Mrs. Alexander stated that she would accommodate the attorney if the complaints were delivered to her at her home. Mr. Hays lived near Mrs. Alexander and in the evening of December 31 at about supper-time he took the complaints to Mrs. Alexander's home for filing. Realizing that Mrs. Alexander would probably not have the necessary forms for issuing summonses at her home, Mr. Hays prepared the original and two copies of the summons according to West's Federal Forms with the marshal's return attached thereto and attached the original and two copies of the summons to each complaint.

The following quoted language is taken from the plaintiffs' brief prepared by Mr. Hays. The court understands that the quoted language correctly recites the facts.

"The original and one copy of each complaint, together with the original and two copies of summons in each case, were handed to Mrs. Alexander at her home, together with $45.00 filing fee, $15.00 for each case. Mrs. Alexander marked each of the complaints filed and dated them December 31, 1956 and signed them as deputy clerk. The writer suggested that the typed summons be also signed and issued on the same date. The writer was under the impression that this would be done although it was suggested by Mrs. Alexander that she would probably substitute the printed summons for the typed summons upon her return to the office but it was again the impression of the writer that the printed summons would contain the date the complaints were filed; that is, December 31, 1956."

January 1 was a legal holiday and Mrs. Alexander returned to her office in Pikeville on January 2, 1957. The routine matters of the office demanded her attention and for reasons best known to her the summonses were not prepared until Thursday, January 3. On that day the clerk substituted the printed summonses for the typed summonses and dated the printed summonses January 3, 1957 instead of December 31, 1956. The summonses were then delivered to the United States Marshal. After being advised by the marshal, Mr. Hays paid to him the required fees for executing the summonses. The summonses were then served on each of the defendants on January 8, 1957.

Rule 3 of the Rules of Civil Procedure, 28 U.S.C.A. provides:

"A civil action is commenced by filing a complaint with the court."

"Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal or to a person specially appointed to serve it. Upon request of the plaintiff separate or additional summons shall issue against any defendants." Rule 4 (a).

It is seen from these rules that in the federal procedure a civil action is commenced by the filing of a complaint with the court. The defendants first take the position that since the complaints were filed at the home of the clerk and not at the office that they were not properly filed on December 31. In this the defendants are in error. Rule 5(e), Rules of Civil Procedure, provides that the filing of a pleading or other paper with the court as required by the rules shall be made by filing them with the clerk of court. Consequently, a filing with the clerk at any place other than the clerk's office would appear to be in compliance with this rule.

If the Federal Rules of Civil Procedure are to apply the controversy over the time when these actions commenced cannot arise. Since Rule 3 provides that an action is commenced when the complaint is filed, the actions would be within the one year statute of limitation and would be considered as having commenced on December 31, 1956.

In the second place it is the position of the defendants that the federal rules do not apply and that the time of the commencement of the actions is governed by Kentucky law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Ragan v. Merchants Transfer Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

The practice of civil cases in Kentucky is under the Kentucky Rules of Civil Procedure which follow in the main the Federal Rules of Civil Procedure. With reference to the commencement of actions, however, there is an important and material distinction. Rule 3 of the Kentucky Rules of Civil Procedure provides that "a civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." KRS 413.250 provides that an action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action.

Ragan v. Merchants Transfer Co., supra, makes it clear that these cases must be governed by Kentucky law. Whether the commencement of an action is a matter of procedure or of substantive law is settled by the Supreme Court in that case which applies the doctrine laid down in Erie Railroad Co. v. Tompkins, supra. In the opinion the court cites Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, which applied the principle to the statutes of limitations on the theory that where one is barred from recovery in the state court, he should likewise be barred in the federal court. In the Ragan case it was conceded by both sides that if the case were presented in a Kansas court it would be barred.

While I realize that I am on very unsubstantial ground I do not concede that the instant case would be barred in a Kentucky court under the extreme situation revealed by the facts. To that extent at least this case differs from the Ragan case. It would serve no purpose to attempt to debate the reasoning applied in Ragan v. Merchants Transfer Co., supra, but it appears to me that the decision adds much confusion and makes Rule 3, Rules of Civil Procedure, practically a dead letter in diversity cases. I like the language of Mr. Justice Rutlege in the dissenting opinion in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 1231, 93 L.Ed. 1528, where he said "that actually in many situations procedure and substance are so interwoven that rational separation becomes well-nigh impossible. But even so, this fact cannot dispense with the necessity of making a distinction. For, as the matter stands, it is Congress which has the power to govern the procedure of the federal courts in diversity

cases, and the states which have that power over matters clearly substantive in nature." If the time for filing a complaint as provided by the federal rules is not a procedural directive, it would seem to me that the filing of a counterclaim or any other affirmative pleading would be without the federal rules.

■■ It was the purpose in adopting the Federal Rules of Civil Procedure that a uniform practice be established in order that lawyers throughout the United States would not be hampered or taken unawares by local rules. In the instant case the lawyer in Virginia was relying on the Rules of Civil Procedure to tell him he could file an action in the federal court. The very purpose of the rules is defeated as there might be 48 different times and plans under which actions in the state courts could be commenced. I am not denying the well established principle that statutes of limitations become integral parts of causes of action made so by local law. In the present cases the local law to be considered is not the statute of limitation but the law which gives these plaintiffs a cause of action. Their right to proceed is not based on a Kentucky statute but on a common law right to recover in tort for negligence. Consequently, the statute of limitation cannot be said to be a part of the remedy made available to the plaintiffs for the alleged wrong.

Here the plaintiffs had a right to proceed for the redress of a wrong and under the federal statute, since there was the requisite diversity of citizenship, they proceeded in the federal court and practiced their cases under federal procedure. I do not know the basis of the right of action which the plaintiff was seeking to enforce in the Ragan case. Whether it was a common law action or a Kansas statutory provision is not revealed by the opinion.

The cases of Mohler v. Miller, 6 Cir., 235 F.2d 153, and Bomar v. Keyes, 2 Cir., 162 F.2d 136, were based upon the Civil Rights Act; 42 U.S.C.A. § 1983. Both of these cases held that while the state law controls the time in which an ac-

tion based upon a federal statute must be begun, the manner in which an action is commenced is governed by the law of the forum for it was said such matters are procedural and not substantive. To the same effect was Isaacks v. Jeffers, 10 Cir., 144 F.2d 26.

In Bomar v. Keyes, supra, Judge Learned Hand used the following pertinent language [162 F.2d 140]:

"We think that Rules 3 and 4 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have made no longer applicable § 17 of the New York Civil Practice Act, which fixes the beginning of the action at the date when the writ is served, or is put into the sheriff's hands for service. The Rules have with some modification adopted the practice which was apparently general in equity: i.e., that the filing of the complaint, when followed by lodging the writ in the marshal's hands, will toll the statute. Therefore, we cannot see that any question arises except whether they go beyond the warrant of the statute: 'the forms of process, writs, pleadings, and motions, and the practice and procedure in civil actions at law. Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant.' We have not to deal with a case in which the limitation is annexed as a condition to the very right of action created. The Civil Rights Act is not cast in that form; and when a right is not so conditioned, the statute of limitations is treated as going to the remedy. We are content therefore to follow the Tenth Circuit, in holding that the filing of the complaint tolls the statute."

The opinion in Mohler v. Miller, supra, which was handed down on June 29, 1956, makes no reference to Ragan v. Merchants Transfer Co., supra, decided June 20, 1949.

In Isaacks v. Jeffers, supra, the court said:

"We are of the opinion that since the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we must now look to Rules 3 and 4 to determine when the action was commenced. Rule 3 provides that 'a civil action is commenced by filing a complaint with the court.' Rule 4 provides that: 'Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal or to a person specially appointed to serve it. Upon request of the plaintiff separate or additional summons shall issue against any defendants.' Under these rules we think the action was commenced and the running of the statute interrupted by the filing of the complaint, although the process was not actually served until slightly more than sixty days after the expiration of four years from the accrual of the action." [144 F.2d 28.]

In Deupree v. Levinson, 6 Cir., 186 F.2d 297, 302, the court pointed out that the limitation which was held to bar the action in that case was not embodied in the substantive law which created the right of action. It cited in support of this statement Irwin v. Smith, 150 Ky. 147, 150 S.W. 22, and Finck v. Albers Super Markets, 6 Cir., 136 F.2d 191. The opinion further said: "The one-year limitation which appellant concedes applies here is embodied in the general statute of limitations, § 413.140, KRS. Such a statute is *procedural* only." (Emphasis added.) I quote further from the opinion in the Deupree case:

"Even in diversity cases, while the substantive right created by statute is controlled by state law, Erie R. Co. v. Tompkins, supra, procedural matters are governed by the law of the forum."

I have referred to these federal court cases to emphasize the difficulty in applying what are intended to be simple rules of procedure in diversity cases.

As I have stated, I recognize that Ragan v. Merchants Transfer Co., supra,

requires this court to determine the question of whether or not these actions were commenced in the federal court by Kentucky law. While it is said that a Kansas court would have decided that the action in the Ragan case was barred, I am convinced, and repeat, that the Kentucky Court of Appeals, under the facts in these cases, would rule, in the light of its former opinions and texts, that the cases were not barred. I make this statement notwithstanding what might appear to be rulings directly to the contrary.

I must emphasize that this is a most extreme case. There probably never was and never will be another one like it. I call attention to the fact that the attorney for the plaintiffs living in Virginia thought he was protecting their rights by sending the complaints to be filed in a federal court under a federal rule which said that actions are commenced when the complaints are filed.

It might be argued that he should not have waited until the eleventh hour to assert his clients' causes of action. That is not valid reasoning. The plaintiffs were given a year from the time the action accrued to assert their claims. The statutory period was fixed by the legislative body and must be considered reasonable and proper for actions of this nature. There is no reflection upon the plaintiffs nor their attorney for their exercise of the privilege of waiting for nearly a year before asserting the claims. The plaintiffs were under no compunction to seek their remedies at an earlier time than they deemed necessary. Anderson v. Abbott, D. C., 61 F.Supp. 888.

Neither the litigants nor their attorneys were required to anticipate that on the last day in which the actions could be brought the clerk's office would be closed. The attorney for the plaintiffs went to the extreme in an effort to commence these actions. When he found the office closed he communicated with the deputy clerk at her home, took the complaints to her, delivered them to her, paid the required fees, and delivered

summonses which he had prepared with the request that they be issued.

According to the record the complaints were in the office of the clerk on January 2, 1957, but for some reason the summonses were not issued on that date. At any rate, the attorney for the plaintiffs had done everything that it was humanly possible for him to do to protect the rights of his clients.

All of the cases cited by the defendants are cases in which a great time had elapsed—some several days or weeks or months—between the time when the process should have been completed. In the instant case it is only a matter of hours from the time the complaints were lodged with the clerk and the process actually issued.

■ I am mindful of the importance of a strict observance of the statutes of limitation. "Statutes of limitation are vital to the welfare of society and are favored by the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs." Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807. When, however, no one will be made to suffer by reason of a few hours delay and a litigant has done all that it is within his power to do to seek redress in a court of justice for an alleged wrong done to him and there is grave doubt in the mind of the court that the statute has run, in the interest of justice this doubt should be construed on the side of the litigant. I am confident that such a decision in these cases will set no precedent that will affect the stability of the law.

■ I recognize the rule that has been laid down by the court of last resort in Kentucky in cases which might at first blush appear conclusive that these cases are barred by limitation. I am not unmindful of the ancient and valuable legend that hard cases make bad law. A strict and literal application of the rules of law must lead inevitably to the conclusion that these actions were not commenced until the summonses were issued on January 3, 1957. The filing of a petition does not commence an action within the meaning of the rules and statutes of Kentucky. It is necessary that in addition to the filing that a summons be issued in good faith. Simpson v. Antrobus, 260 Ky. 641, 86 S.W.2d 544; Louisville & N. R. Co. v. Little, 264 Ky. 579, 95 S.W.2d 253.

I am fully aware of the fact that an attempt to modify or make exception to this rule might lead to confusion. The language of the court in Louisville & N. R. Co. v. Napier's Administrator, 230 Ky. 323, 19 S.W.2d 997, 999, is pertinent and forceful. In the opinion the case of Casey v. Newport Rolling Mill Co., 156 Ky. 623, 161 S.W. 528, was cited with the following quoted from that case:

"But the cases relied on do not sustain the contention that the mere direction to the clerk to issue summons is a commencement of the action against a defendant, who as a matter of fact, is not summoned at all. Indeed, there is a wide difference between directing a summons to be issued and actually causing it to be issued. In the one case no summons may ever issue at all; in the other case it must have been issued. If the broad rule contended for by the plaintiff were adopted, it would lead to endless confusion. The commencement of an action would be determined by parol evidence instead of the actual issuance of the summons. Parties having the right to rely on the record, showing that no summons had been issued, would be met with the contention that the clerk had been requested to issue summons, thus making important property rights depend on an issue of veracity between the clerk and the litigant or his attorney. In our opinion, such was not the purpose of the law-making power. The statute and code make it clear that an action is commenced by the issuance of the summons, and not by a request to have the summons issued."

Notwithstanding the apparent effort on the part of the Kentucky Court of

Appeals to shut the door on any possible departure from this rule, I feel that there is a factual distinction between the cases at bar and all other cases and that both law and equity direct an exception, if it is an exception, to the rule to be made here. As I have heretofore said and now repeat for emphasis, to deny these litigants a right to a hearing, under the facts which show that their attorney had done everything humanly possible to commence the actions, would be harsh in the extreme. He performed all of the functions which could reasonably be expected of an attorney. When he was unable to gain access to the clerk's office he contacted the deputy clerk in her home and took the added precaution of physically preparing the summonses. Nothing remained for the clerk to do but the ministerial duty of signing her name to the summonses. It was impossible for the attorney to compel her to do that without physical force.

Rules of law laid down in decisions of courts lose some of their force when taken out of context in the opinion which presents a different factual situation. In all of the cases I have cited sustaining the rule there is a definite distinction from the instant case. While time alone may not be a strong reasoning element it nevertheless should not be ignored when taken in connection with other strong factual differences. All of the cases indicate that a much greater length of time elapsed between the filing of the plaintiffs' complaints or petitions than is shown in this case. A possible exception is the case of Simpson v. Antrobus, supra, where the question was whether or not the entry of the clerk, which indicated that the petition had been filed on February 1, 1934 instead of January 30, 1934, was correct. In that case it was not the question of *commencement* but the *filing* of the action. There was a factual controversy.

There is no factual controversy here. It is admitted that the complaints were left with the deputy clerk and marked "filed" in good faith before the expiration of the statutory period of limitation.

Since Ragan v. Merchants Transfer Co., supra, denies the right to practice this case by the Federal Rules of Civil Procedure and directs that under Erie Railroad Co. v. Tompkins, supra, it must be practiced by the Kentucky procedure, the plaintiffs' position can only be sustained by a determination of what the Kentucky courts have done or rather how they would interpret the law of Kentucky if these cases were pending in a state court. I frankly admit that my attention is called to no case and my research has revealed no case directly in point. I must assume that there has never been a similar factual situation important enough to justify an exhaustion of legal remedies. However, in the light of conclusions reached and dicta in other cases, I am convinced that the Court of Appeals of Kentucky, should this matter have been presented to it, would have sustained the position of the plaintiffs on these cases.

In 1883 the Federal Circuit Court for the District of Kentucky in Bisbee v. Evans, 17 F. 474, 476, laid down the rule that United States courts of equity do not apply the state statute of limitations in obedience to the statute but by analogy. The court used the following language:

"Whenever a complainant has in good faith obtained process, or, it may be, whenever he has done *all* that is necessary for him to do to obtain process to bring a defendant before the court, then his suit is commenced as to that defendant, and then the running of the statute ceases, and not before."

The emphasis on the word "all" is contained in the language of the opinion by italics and is not supplied.

In Louisville & N. R. Co. v. Smith's Adm'r, 87 Ky. 501, 9 S.W. 493, 495, 10 Ky.Law Rep. 514, the Kentucky court while setting forth that the plaintiff, in order to estop the statute of limitation, has to file his petition and cause a summons to issue thereon, used this significant language:

"* * * it is the official duty of the clerk to issue the summons in

accordance to law, and it is not incumbent upon the plaintiff to see that he issues it in accordance to law. On the contrary he has the right to repose entire confidence in the clerk, not only knowing his duty, but doing his duty. Therefore, the plaintiff is not guilty of the laches that is contemplated by the statute of limitation in order to deprive him of his remedy, as it was caused by the act of the clerk, who was officially bound to act according to law in the interest of both appellant and appellee; and, in so far he may be treated as an agent, he was equally the agent of both, as in issuing the summons it was his official duty to protect the rights of both. If these reasons are not sufficient in themselves to prevent the statute of limitation from running, they at least furnish strong reasons why the duty of the clerk in the particular above mentioned should be construed as merely directory. His duty being merely directory, it follows that the appellee's action was kept alive, and therefore, was not barred by time."

Vol. 13 of the Kentucky Digest, under ☞ 119(1), Issuance of Process, Limitation of Actions, recites:

"Super. 1887. The filing of a petition and direction in good faith to the clerk to issue a summons, whether it is issued or not, commences the action, and prevents the running of limitations. Louisville & N. R. Co. v. Smith's Adm'r, 9 Ky.Law Rep. 404."

An examination of the volume of the Kentucky Law Reporter reveals that it does not set forth the entire opinion but only a syllabus.

In 27 A.L.R.2d at page 262, in an annotation to the Kentucky case of Hausman's Adm'r v. Poehlman, 314 Ky. 453, 236 S.W.2d 259, 27 A.L.R.2d 233, the annotator points out that in Louisville & N. R. Co. v. Smith's Adm'r, 9 Ky.Law Rep. 404, it was held, without reference to the statute relating to comencement of actions, that the filing of the petition and the direction in good faith to the clerk to issue a summons, whether issued or not, commenced the action and prevented the running of the statute of limitations.

In the annotation to Hausman's Adm'r v. Poehlman, supra, 27 A.L.R.2d 261, the commentator gives a comprehensive discussion of numerous Kentucky cases involving the commencement of a civil action. He uses the following language:

"Kentucky statutes declaring that a civil action is commenced by filing a petition in the office of the clerk of the proper court and causing a summons to be issued thereon, or 'by causing a summons to be issued, or a warning order to be made thereon,' have been construed in a number of cases.

"Under such statutes it has been held or recognized that the mere filing of the petition, without a summons being sued out in good faith (and so without service of the process), before the statutes of limitations would have run, does not toll the statute, *unless the failure of compliance is due to the negligence or misconduct of the clerk of the court.*" (Emphasis added.)

While the matter of good faith may not be taken into consideration in all cases, the Kentucky authorities imply that under the extreme circumstances reflected by the facts here, where the good faith of the plaintiffs is not questioned, it should save the plaintiffs' cases from being dismissed. The failure to issue the summonses was due solely to a matter over which the plaintiffs had no control.

In Louisville & N. R. Co. v. Little, supra [264 Ky. 579, 95 S.W.2d 254], we find the following language from the opinion: "In any condition the element of good faith enters." And at another place: "All the authorities are to the effect that the cause of action is not commenced until there is a bona fide intention to have the summons filled out and signed by the clerk * * *."

In a volume on the Kentucky Civil Rules, Mr. Watson Clay, a commissioner

of the Kentucky Court of Appeals, on P. 11 under the heading "Rule 3. Commencement of Action", makes this statement:

"The Statute of Limitations

"Insofar as the statute of limitations is involved, a troublesome problem possibly could arise with respect to whether the fixing of a time for the commencement of an action is procedural or substantive. While the limitation period itself is a substantive matter within legislative control, the manner and method by which an action is commenced is procedural. The problem is not presented under this Rule, at least at the present time, because the Rule carries out the intent and purpose of the statute, KRS 413.250. The word 'process' appearing in the statute obviously includes 'warning order' as written in the Rule. Assuming that proper process is issued in good faith, which will be discussed under Comment 3, an action should be deemed commenced or brought within the meaning of the statute of limitations when a complaint is filed."

The case of Prewitt v. Caudill, 250 Ky. 698, 63 S.W.2d 954, was a case involving an election contest. In seeking to file his petition contesting the election, the plaintiff was prevented from doing so on the last day allowed by the Kentucky statute for filing such petitions by the chicanery of the circuit clerk who deliberately locked his office and made himself unavailable by departing from the State of Kentucky. The contestant exercised the best judgment possible by leaving the complaint with the jailor of the county where the petition was sought to be filed. The Kentucky Court of Appeals upheld his right to maintain the action on the ground that he was prevented by circumstances beyond his control from having the summons issued in time and that the delay in issuing the summons was due solely to the fault of the circuit clerk over whom the petitioner had no control.

In the opinion the Kentucky Court referred to Ward v. Howard, 177 Ky. 38, 197 S.W. 506, 510. That was an election case and in order to vest the appellate court with jurisdiction to hear the appeal, a supersedeas bond had to be executed before the circuit clerk on a certain day. The contestants' attorneys appeared in the clerk's office prepared to execute the bond after supper at about 7:30 P.M., but the clerk refused to permit them to do so, closed the office and thereafter could not be found. In discussing the question of whether or not the contestants would lose their rights because of the action of the clerk the court said:

"The question now is, can the clerk by deliberately absenting himself from his office, or by closing his office, or by concealing himself, or by refusing to take the bonds, deprive the contestants of their right to take appeals? If this statute should be so strictly construed as that this court would not have jurisdiction under any conditions or under any circumstances unless the bond was executed on the day the judgment was rendered, it can readily be seen that in many cases the contestant, without any fault or neglect on his part, and although he may have made every reasonable effort to execute the bond on the day the judgment was rendered, would be denied the right of appeal, by the conduct of the clerk, or by some other condition that could not be anticipated or provided against.

"But we do not think the statute should be so strictly and harshly construed. Its purpose was to hasten the procedure in these cases and not to deprive the contestant of the right to appeal for the failure to execute a bond on the day of the judgment when, by circumstances beyond his control, he was prevented from executing it on that day."

Later in the opinion it was pointed out that no litigant should be denied the right to prosecute an appeal on account of his failure to execute a bond within the time allowed "when this failure is

due to casualty or misfortune or circumstances beyond his control, and the delay will not prejudice the substantial rights of his adversary." It held that since it is made satisfactorily to appear that a litigant was prevented from complying with the mandatory provisions of a Kentucky statute in relation to time by circumstances beyond his control, he may comply with the statute on the day following and it would be given the same effect as if done on the proper day.

In conclusion I again acknowledge the full impact of the decision of the Supreme Court in Ragan v. Merchants Transfer Co., supra. I am not convinced that that court will continue to adhere to a rule which involves the doctrine of Erie Railroad Co. v. Tompkins, supra, with various statutes of limitation in the forty eight states in an essentially procedural matter.

However, aside from this, it is my judgment that the law of Kentucky justifies the conclusion that the statute of limitations shall not deny the plaintiffs here the right to be heard.

An order in conformity with this opinion is this day entered.